IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN DOE, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| V. | § | Civil Action No. 3:25-cv-57 |
| | § | |
| VICTORIA SERPA, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff John Doe[1] ("Doe" or "Plaintiff") files this Original Complaint against Defendant Victoria Serpa ("Serpa" or "Defendant") on personal knowledge as to all facts regarding himself and on information and belief as to all other matters, as follows:

**I.**

**PRELIMINARY STATEMENT**

In today's digital age, it has become all too easy for people to weaponize private and intimate information to inflict personal and professional harm. This is precisely what Defendant Victoria Serpa has done to John Doe. During their romantic relationship, Defendant requested, and John Doe sent her a sexually explicit digital photograph of himself, with the understanding that it would remain private. After their relationship ended, Defendant maliciously sought revenge by sending this sexually explicit image of John Doe to his potential employer—without his

---

[1] Plaintiff files this complaint under the pseudonym "John Doe" pursuant to 15 U.S.C. § 6851(b)(3)(B). Plaintiff's real name will be disclosed in a forthcoming Affidavit of John Doe, which is filed under seal.

knowledge or consent. This unauthorized disclosure directly caused the employer to rescind its employment offer to John Doe, resulting in the loss of his dream job.

The malicious dissemination of private images, often referred to as "revenge porn," is a violation of trust that has devastating consequences for its victims. Recent statistics underscore the prevalence and impact of revenge porn. One study found that 1 in 12 adult social media users have been victimized by the unauthorized distribution of private sexually explicit images or videos.[2] These violations result in significant emotional distress, depression, suicidal ideation, and social isolation.[3] Victims are often targeted by online harassment, stalking, and threats, and many experience job loss or damage to their professional reputation,[4] as was the case here with John Doe.

As a direct result of Defendant's unlawful actions, John Doe has already experienced substantial harm, including the complete loss of a promising career opportunity and the emotional toll of having such an intimate image exposed to his professional contacts. John Doe now lives in fear of further disclosures. This lawsuit seeks to prevent any further harm, to stop Defendant's unlawful conduct, and to obtain compensation for the extensive damages that Defendant's actions have caused.

---

[2] Asia E. Eaton, Holly Jacobs, & Yanet Ruvalcaba, 2017 Nationwide Online Study of Nonconsensual Porn Victimization and Perpetration: A Summary Report, Cyber Civil Rights Initiative 11 (2017), *available at* https://cybercivilrights.org/wp-content/uploads/2017/06/CCRI-2017-Research-Report.pdf.

[3] National Association of Attorneys General, An Update on the Legal Landscape of Revenge Porn (2021), *available at* https://www.naag.org/attorney-general-journal/an-update-on-the-legal-landscape-of-revenge-porn/.

[4] *Id.*

## II.

## PARTIES

### A. Plaintiff

1. Plaintiff John Doe is a citizen and resident of the State of Texas.

### B. Defendant

2. Defendant Victoria Serpa is a Texas citizen and resides in Dallas County, Texas. Serpa may be served at her residence at 1 Bretton Woods Way, Dallas, Texas 75220 or wherever she may be found.

## III.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this civil action presents a federal question as Plaintiff presents a civil claim arising under the Constitution, laws, or treaties of the United States.

4. This Court has supplemental jurisdiction over all other claims that are so related to the claims in this action within such original subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution pursuant to 28 U.S.C. § 1367(a).

5. This Court has personal jurisdiction over Defendant Victoria Serpa because she is a domiciliary and resident of the State of Texas.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because Defendant Victoria Serpa resides, or may be found, in this District.

## IV.

## FACTUAL BACKGROUND

### A. John Doe and Defendant's Romantic Relationship

7. John Doe and Defendant engaged in a romantic relationship for approximately eleven months, from May 2023 to March 2024.

8. During this relationship, Defendant discovered that John Doe was in possession of a sexually explicit digital photograph of himself that he took with his phone's camera.

9. Defendant requested John Doe to send her this specific sexually explicit image of himself.

10. John Doe agreed and sent Defendant the sexually explicit image of himself.

11. Early in their relationship, Defendant encouraged John Doe to leave his job so that he could spend time with Defendant. Defendant is financially wealthy, and promised she would take care of John Doe financially.

12. Based on Defendant's encouragement and representations, around May 2023 John Doe left his employment and moved into Defendant's residence.

13. Around July 2023, it became apparent that John Doe's relationship with Defendant was not progressing as much as he hoped.

14. While Defendant still maintained a romantic relationship with John Doe, Defendant demanded that John Doe move out of Defendant's residence.

15. Accordingly, John Doe began to search for new employment.

### B. John Doe's Dream Job

16. John Doe has more than 25 years of experience in software and technology, with a focus on sales and marketing. The software industry tends to be driven by younger people, and very few employment offers are made to persons of John Doe's age.

17. In November 2023, John Doe was contacted by a co-founder of an artificial intelligence company regarding a potential role with his company. This company was focused at that time on product development and would not need John Doe's skills until such time that sales and marketing activities would begin. After extensive discussion, this company expressed interest in hiring John Doe in early May 2024 when it anticipated beginning such sales and marketing activities. Importantly, John Doe's hiring was to coincide with the company's official launch in the North American market of its signature product at a large industry trade show.

18. After several months of discussions and negotiation, John Doe and the company informally agreed to formalize employment through a written offer of employment when the company reached a stage where it was necessary to initiate sales and marketing activities. The company also planned a press release concerning John Doe's hiring. The company went so far as to provide John Doe with a company email address, made hotel reservations, and purchased tickets so that John Doe could participate in the upcoming aforementioned trade show as an employee of the company.

19. The position provided John Doe an opportunity to fill a leadership role with a company that provided a breakthrough technology, a very attractive and lucrative compensation package, and equity in the company that would likely increase in value significantly over time.

**C. Defendant Ruins John Doe's Dream Job Opportunity and Invades His Privacy**

20. Disgruntled with the breakup from John Doe in March 2024, Defendant decided to extract her revenge.

21. To this end, in April 2024 Defendant sought out John Doe's potential new employer, whom she thought at the time had already hired John Doe.

22. Defendant sent several disparaging statements about John Doe to the two co-founders and executive leaders of John Doe's potential employer.

23. Defendant's first messages were sent on or about April 16 and 18, 2024, to one of the company's co-founders, who is also the company's chief technology officer, via private message on Facebook. This co-founder was and is in the Atlanta, Georgia area.

24. This co-founder did not respond to Defendant's private messages about John Doe so that he could inform and discuss the issue with his company's executive team.

25. Frustrated that she did not make any progress with these disparaging messages, Defendant then sent a series of disparaging messages about John Doe to the company's other co-founder, who is also the company's CEO, via private message on LinkedIn. This co-founder was and is in the United Kingdom of Great Britain and Northern Ireland.

26. Defendant's goal was to get John Doe fired from his new dream job.

27. While John Doe's potential new employer took Defendant's concerns seriously, it did not take any adverse action concerning John Doe's employment because Defendant did not provide any evidence to support her allegations of John Doe's recent conduct.

28. Defendant then changed tactics and sent the CEO the sexually explicit image of John Doe.

29. This disclosure was made by Defendant in Texas and was disclosed in interstate or foreign commerce as it was sent over the Internet, via LinkedIn, to the CEO of John Doe's potential employer, in the United Kingdom of Great Britain and Northern Ireland.

30. It was clear from the context of the digital conversation that the sexually explicit image was of John Doe.

31. John Doe did not consent to Defendant's disclosure of his sexually explicit image to anyone, let alone his potential new employer.

32. When Defendant made the disclosure, she knew that John Doe had not consented to such disclosure or recklessly disregarded whether John Doe had not consented to such disclosure.

33. Initially, John Doe's potential employer did not know what to do with respect to Defendant's disclosure of John Doe's sexually explicit photo. John Doe's potential employer held off on formally extending a written offer of employment to John Doe. Nevertheless, John Doe attended and participated in the trade show on behalf of the company. The company never issued the planned press release regarding John Doe's hiring.

34. Following the trade show, John Doe's potential employer decided it could not move forward with John Doe's employment given Defendant's disclosure of John Doe's sexually explicit photo.

35. Defendant's unlawful act had its intended consequence – John Doe's potential new employer changed its intention to hire John Doe. John Doe's employment prospects were utterly destroyed.

**D. The Damage Done**

36. Prior to Defendant's unlawful conduct, John Doe was on track to his dream job in an exciting new industry.

37. Defendant took all of that away in one fell swoop that invaded his privacy.

38. Defendant's unlawful conduct caused John Doe damages in the form of lost salary, lost stock options, equity in the prospective employer, damage to his mental health, and invasion of his privacy.

39. In addition, due to the targeted nature of Defendant's attack, John Doe is now wary of seeking alternative comparable employment for fear that Defendant may further disclose his

intimate visual material to other potential employers. John Doe has not been able to find new employment comparable to the job that Defendant destroyed.

40. The emotional toll of Defendant's actions has been profound, leaving John Doe with severe anxiety, humiliation, and depression. He also faces ongoing reputational damage, which has compounded his distress and left him fearful of pursuing new career opportunities. The invasion of his privacy continues to haunt him, as he lives in constant apprehension that Defendant may take further steps to undermine his personal and professional life.

## V.

## CLAIMS

### A. Count One: Nonconsensual Disclosure of an Intimate Visual Depiction (15 U.S.C. § 6851)

41. Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

42. Defendant disclosed an intimate visual depiction of John Doe to a third person.

43. Defendant's disclosure was made in a manner affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce.

44. Defendant made the disclosure without John Doe's consent.

45. Defendant made the disclosure where such disclosure was made by a Defendant who knew that, or recklessly disregarded whether, John Doe has not consented to such disclosure.

46. Defendant's disclosure violated 15 U.S.C. § 6851.

47. John Doe has sustained and will continue to sustain substantial damage in an amount not yet fully ascertainable, including but not limited to damage to his business reputation and goodwill.

48. In the alternative and at his election, John Doe is entitled to seek liquidated damages for each disclosure by Defendant of an intimate visual depiction of John Doe in an amount of $150,000 per disclosure, pursuant to 15 U.S.C. § 6851(b)(3)(A)(i).

49. Defendant's unlawful conduct was wanton, willful, and malicious, warranting the imposition of exemplary damages in an amount to be determined by the trier of fact.

50. John Doe has suffered and continues to suffer irreparable harm and damage as a result of the above-described acts. Accordingly, John Doe seeks a temporary restraining order, preliminary injunction, and a permanent injunction pursuant to 15 U.S.C. § 6851(b)(3)(A)(ii) to prohibit further display or distribution of intimate visual material of John Doe.

51. John Doe is entitled to recover from the Defendant the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, pursuant to 15 U.S.C. § 6851(b)(3)(A)(i).

### B. Count Two: Unlawful Disclosure of Intimate Visual Material (TEX. CIV. PRAC. & REM. CODE § 98B.001, et seq.)

52. Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

53. Defendant disclosed intimate visual material of John Doe to a third person.

54. The intimate visual material of John Doe depicts John Doe with John Doe's intimate parts exposed.

55. The disclosure of the intimate visual material of John Doe reveals the identity of John Doe as it was made in the context of a private electronic discussion regarding John Doe.

56. Defendant made the disclosure of the intimate visual material of John Doe without John Doe's effective consent.

57. Defendant made the disclosure with the intent to harm John Doe.

58. At the time of the disclosure, Defendant knew or had reason to believe that the intimate visual material was obtained by Defendant or created under circumstances in which John Doe had a reasonable expectation that the material would remain private.

59. Defendant's disclosure of the intimate visual material of John Doe directly and proximately caused injury to John Doe, which resulted in damages, including, but not limited to, damages for mental anguish, in an amount to be determined by the trier of fact.

60. Defendant's unlawful conduct was wanton, willful, and malicious, warranting the imposition of exemplary damages in an amount to be determined by the trier of fact.

61. Defendant's unlawful conduct has caused and will continue to cause John Doe irreparable injuries for which there is no adequate legal remedy. Accordingly, John Doe seeks a temporary restraining order, preliminary injunction, and a permanent injunction pursuant to pursuant to TEXAS CIVIL PRACTICE AND REMEDIES CODE § 98B.004 to prohibit further display or distribution of intimate visual material of John Doe.

62. Pursuant to TEXAS CIVIL PRACTICE AND REMEDIES CODE § 98B.003, John Doe is entitled to costs of this lawsuit and reasonable attorney's fees.

C. **Count Three: Invasion of Privacy**

63. Plaintiff realleges and incorporates the allegations set forth in the preceding paragraphs as if set forth in full herein.

64. Plaintiff John Doe is a person.

65. Defendant took wrongful actions that invaded John Doe's privacy. This includes, but is not limited to, sharing an intimate visual depiction of John Doe with a third party without John Doe's consent.

66. Defendant's actions constituted intentional intrusion upon John Doe's solitude, seclusion, or private affairs.

67. Defendant's intentional intrusion upon John Doe's solitude, seclusion, or private affairs would be highly offensive to a reasonable person.

68. Defendant's actions were unwarranted, unwanted, and without justification.

69. Defendant's actions caused injury to John Doe.

70. Defendant's actions proximately caused injury to John Doe.

71. Defendant's unlawful conduct directly and proximately caused injury to John Doe, which resulted in damages in an amount within the jurisdiction of this Court to be determined by the trier of fact.

72. Defendant's unlawful conduct was wanton, willful, and malicious, warranting the imposition of exemplary damages in an amount to be determined by the trier of fact.

73. Defendant's unlawful conduct has caused and will continue to cause John Doe irreparable injuries for which there is no adequate legal remedy. Accordingly, John Doe is entitled to a temporary restraining order, a preliminary injunction, and a permanent injunction.

## VI.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands that judgment be entered against Defendant as follows:

a. An ex parte Temporary Restraining Order prohibiting Defendant from directly or indirectly disclosing any sexually explicit images or videos depicting John Doe; continuing to display or disclose any sexually explicit images or videos of John Doe; destroying any evidence proving any prior disclosure; and disclosing John Doe's identity to anyone without permission from the Court;

b. A Preliminary Injunction prohibiting Defendant from directly or indirectly disclosing any sexually explicit images or videos depicting John Doe; continuing to display or disclose any sexually explicit images or videos of John Doe;

  destroying any evidence proving any prior disclosure; and disclosing John Doe's identity to anyone without permission from the Court;

c. Full permanent injunctive relief prohibiting Defendant from directly or indirectly disclosing any sexually explicit images or videos depicting John Doe; continuing to display or disclose any sexually explicit images or videos of John Doe; and disclosing John Doe's identity to anyone without permission from the Court;

d. Actual damages, including but not limited to:
  i. Past and future pain and suffering;
  ii. Past and future mental anguish;
  iii. Past and future medical and psychological expenses;
  iv. Loss of past earning capacity;
  v. Loss of future earning capacity; and
  vi. Past and future injury to reputation;

e. Pursuant to 15 U.S.C. § 6851(b)(3)(A)(i), that upon John Doe's election, Defendant be required to pay liquidated damages up to $150,000 for each display or disclosure of an intimate visual depiction of John Doe;

f. Exemplary damages in an amount to be determined by the trier of fact;

g. Prejudgment and post-judgment interest at the highest rate(s) allowed by law;

h. Reasonable attorney's fees in prosecuting her claims through trial and, if necessary, through appeal;

i. Costs of court; and

j. Such other further relief which this Court may deem just and proper.

Respectfully submitted,

**HUTCHERSON LAW PLLC**

/s/ Kenton J. Hutcherson
Kenton J. Hutcherson, Esq.
Texas State Bar No. 24050798
Hutcherson Law PLLC
3400 Oak Grove Avenue, Suite 350
Dallas, Texas 75204
Tel: (214) 443-4200
Fax: (214) 443-4210
Email: kjh@hutchersonlaw.com

**ATTORNEY FOR PLAINTIFF**